```
                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| RICHARD OWENS,<br><br>              Plaintiff,<br><br>    v.<br><br>RUTGERS UNIVERSITY BEHAVIORAL<br>HEALTH CARE, et al.,<br><br>              Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 15-4730 (JBS-TJB)<br><br>**OPINION** |

APPEARANCES:

William B. Hildebrand, Esq.
Law Offices of William B. Hildebrand L.L.C.
36 Tanner Street, Suite 300
Haddonfield, New Jersey 08033
    Attorneys for Plaintiff Richard Owens

Margaret Raymond Flood, Esq.
Norris McLaughlin & Marcus, P.A.
721 Route 202-206, Suite 200
Bridgewater, New Jersey 08807-5933
    Attorneys for Defendants Rutgers University Behavioral
Health Care, William Briglia, D.O., and Monica Tsakiris, APN.

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

    Before the Court is the motion of Defendants Rutgers University Behavioral Health Care ("Rutgers"), William Briglia, D.O., and Monica Tsakiris, APN (collectively "Defendants") to dismiss Plaintiff Richard Owens' civil rights complaint. (Briglia/Tsakiris Motion, Docket Entry 22; Rutgers Motion,

Docket Entry 30.) Plaintiff opposes the motion. (Opposition, Docket Entry 40.) These motions are being decided on the papers pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the motions are granted in part.

**II. BACKGROUND**

Plaintiff is a convicted and sentenced state prisoner currently confined at South Woods State Prison ("SWSP"), Bridgeton, New Jersey. Since 2008, he has been diagnosed as having a bulging disc, chronic back pain, chronic sciatica in his left leg, degenerative disc disease, and arthritis in his spine. Complaint, Docket Entry 3 ¶¶ 16-19. As a result, he has been prescribed a back-brace, walker, cane, wheelchair, non-narcotic pain medication, and muscle relaxers. *Id.* ¶¶ 20, 22. He is restricted to the ground floor and bottom bunk. *Id.* ¶ 20.

In September 2013, Plaintiff visited SWSP's medical facilities, which are run by Rutgers under a contract with the New Jersey Department of Corrections, in order to request a renewal of his medical equipment and to discuss spinal surgery in order to treat his sciatica, degenerative disc disease, and arthritis. *Id.* ¶¶ 10, 25-26. Nurse Tsakiris, the nurse practitioner on duty, informed Plaintiff in October 2013 that there was no surgery for spinal arthritis. *Id.* ¶ 27. Plaintiff filed a grievance against her with Dr. Woodward, SWSP's medical director. *Id.* ¶ 28.

2

Plaintiff met with Nurse Tsakiris again on November 21, 2013 and again inquired into surgery for his sciatica. *Id.* § 29. He provided her with some medical records from a previous lawsuit regarding his disability, but Nurse Tsakiris "deemed it irrelevant" and "'warned' the Plaintiff in a verbally aggressive manner to 'stop' writing grievances against her." *Id.* Plaintiff filed another grievance against her two weeks later. *Id.* ¶ 30.

In February 2014, Plaintiff experienced constant lower back pain and numbness radiating down his left leg. *Id.* ¶ 31. He requested stronger pain medication and asked for a renewal of his muscle relaxant. *Id.* ¶¶ 31-32. He additionally requested that Dr. Woodward provide him with transportation in accordance with the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, to a court hearing on May 29, 2014 and provided documents supporting his request. *Id.* ¶ 33. Plaintiff filed another "sick call slip" on February 18, 2014 indicating that he had not been seen by medical for his back pain and numbness and again requested a renewal of his muscle relaxant. *Id.* ¶ 34. He was seen by a nurse the next day and was told that the prescription would be renewed "for an extended period"; however, he was later informed the muscle relaxant had only been renewed for a seven-day period. *Id.* ¶¶ 35-36. Additionally, he alleges no prescription had been written when he went to pick up the promised medication at "PM Pill Call" on February 21. Plaintiff

repeatedly requested Nurse Tsakiris renew the prescription as he was in severe pain. *Id.* ¶¶ 37-40. He was allegedly told on a few occasions that the medication had been ordered, but the PM Pill Call Nurse denied any prescription for muscle relaxation had been placed. *Id.* ¶¶ 41, 43. On March 25, 2014, the PM Pill Call Nurse told Plaintiff he would not be getting any muscle relaxant. *Id.* ¶ 46. According to the complaint, "[Nurse Tsakiris] was continuously manufacturing false information or claims about him in his 'medical records,' *e.g.*, 'that he can bend and life his leg in full range motion without pain and that he is carrying his cane as he walks.'" *Id.* ¶ 42.

Plaintiff filed a grievance about the lack of medical care with Dr. Woodward and requested that Dr. Woodward switch Plaintiff's non-narcotic pain medication to Tramadol.[1] He alleges that Nurse Tsakiris "was still manufacturing false information about him in his medical records and/or undermining the severity of his medical problems for retaliation for his grievances against her and not to have [Rutgers] undertake the cost of 'specialists,' up-dated diagnostic testing and/or an extremely expensive medical procedure and/or spinal surgery." *Id.* ¶ 49. Plaintiff continued to ask for a pain management specialist and

---

[1] "Tramadol is a narcotic-like pain reliever . . . used to treat moderate to severe pain." *Tramadol*, *available at* https://www.drugs.com/tramadol.html (last visited Dec. 20, 2016).

a stronger pain medication throughout April 2014. *Id.* ¶¶ 50-55. Plaintiff alleges he was unable to participate in physical therapy due to his back and leg pain on at least three occasions. *Id.* ¶¶ 53, 58, 63.

Plaintiff saw Nurse Tsakiris on May 6, 2014 at which time she "down-graded" his pain medication and refused to renew his muscle relaxant. *Id.* ¶ 57. According to the complaint, Nurse Tsakiris would "'thrust' the Plaintiff's left leg up while he was laying on the examination table 'already in pain to begin with' and/or against his wishes for her to please stop and/or despite the fact he was overwhelmed with pain." *Id.* ¶ 57. She would then note in his medical records "that he had mobility in his left leg and exhibited no pain during the examination and was ambulating problem free and carrying his cane." *Id.*

On May 23, 2014, Plaintiff was instructed by SWSP officials to get ready for his court trip. *Id.* ¶ 59. Plaintiff was placed in a holding cell awaiting transport; however, he was unable to get into the van as it was not ADA-accessible. *Id.* He was charged with refusing a scheduled trip. *Id.* ¶ 61. He was found guilty of the offense "because the APN documented to the courtline officer that despite Plaintiff's medical problems, ADA-transportation wasn't warranted." *Id.* ¶ 64. Plaintiff appealed the decision, but it was upheld by the associate administrator. *Id.* ¶ 65. He appealed that decision to the New

5

Jersey Superior Court Appellate Division. *Id.* ¶ 68. The Attorney General's Office moved to remand the appeal in order to vacate the charge and sanctions. *Id.* ¶ 71.

In October 2014, Plaintiff wrote to Dr. Woodward and requested a bed wedge, offering to pay for it if necessary. *Id.* ¶ 70. He made another request for the wedge in December 2014 after receiving no response from Dr. Woodward. *Id.* ¶ 72. Plaintiff further alleges that in March 2015, an inmate with a staph infection was moved into Plaintiff's cell despite having open wounds. *Id.* ¶ 72(a). He states that as a result of sharing the cell, he contracted a skin infection, diarrhea, nausea, vomiting, and stomach problems. *Id.* ¶ 72(b). He asserts he is afraid to seek treatment "out of fear of retaliation and/or a manufactured disciplinary charge." *Id.* This complaint followed in June 2015. Counsel was appointed in September 2015.

Defendants originally filed these motions in November and December 2015, however they were administratively terminated by Magistrate Judge Tonianne Boniovanni pending resolution of an issue raised by Plaintiff. Letter Order, Docket Entry 32. The motions were reopened in March 2016.

The complaint alleges Defendants violated the Eighth Amendment by failing to provide necessary medical treatment. Complaint ¶¶ 79-81. He further alleges violations of the ADA and § 504 of the Rehabilitation Act ("RA"), codified at 29 U.S.C. §

6

794, by failing to provide Plaintiff with a reasonable accommodation, specifically an accessible van, *id.* ¶¶ 73-78; intentionally discriminating against him by filing disciplinary charges against him, *id.* ¶¶ 82-84; and retaliating against him "in the form of deliberate indifference," *id.* ¶¶ 85-87. He also alleges Defendants conspired to deny him medical care out of "'invidiously discriminatory animus . . . .'" *Id.* ¶¶ 88-90.

Defendants ask that the complaint be dismissed with prejudice for failure to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6).

### III. STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

7

In reviewing the sufficiency of a complaint, the Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted).

**IV. ANALYSIS**

**A. Dr. Briglia**

The ADA and RA do not create private causes of action against individuals.[2] *See Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015) (citing *Garcia v. S.U.N.Y. Health*

---

[2] Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of Title II, Plaintiff must allege: "(1) that he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Dahl v. Johnston*, 598 F. App'x 818, 819-20 (3d Cir. 2015) (citing 42 U.S.C. § 12132); *see also Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 553 n.32 (3d Cir. 2007). For purposes of this motion only, the Court presumes Plaintiff is a qualified person with a disability.

8

*Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc)). Therefore, the ADA and RA claims against Dr. Briglia are dismissed with prejudice.

Plaintiff alleges Dr. Briglia violated the Eighth Amendment by denying his right to adequate medical care, the First Amendment by retaliating against him for exercising his constitutional rights, and 42 U.S.C. §§ 1985, 1986 by conspiring to deprive him of adequate medical care. In order to set forth a cognizable claim for a violation of the right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). To state a First Amendment retaliation claim, Plaintiff must plead facts indicating (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).

The complaint is devoid of any factual allegations against Dr. Briglia whatsoever. In other words, Plaintiff has not specifically set forth what Dr. Briglia did or did not do that violated Plaintiff's rights. As Plaintiff has not set forth viable claims for relief, the claims against Dr. Briglia are dismissed in their entirety. Since he may be able to allege a set of facts in which Dr. Briglia would be liable for violating the Eighth or First Amendments, the dismissal of those claims is without prejudice.

Plaintiff also has not sufficiently alleged conspiracy claims against Dr. Briglia. "Section 1985(3) establishes a cause of action against any person who enters into a private conspiracy for the purpose of depriving the claimant of the equal protection of the laws." *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029 (1981). To properly allege a civil rights conspiracy under § 1985(3), Plaintiff must allege the existence of:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Kirkland v. DiLeo,* 581 F. App'x. 111, 118 (3d Cir. 2014) (quoting *Farber v. City of Paterson,* 440 F.3d 131, 134 (3d Cir. 2006)). "Section 1986 is a companion to § 1985(3) and provides

10

the claimant with a cause of action against any person who, knowing that a violation of § 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution." *Rogin*, 616 F.2d at 696. Plaintiffs must allege: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994). Plaintiff has not sufficiently alleged facts supporting a reasonable inference that Dr. Briglia agreed with others to violate Plaintiff's civil rights or that he knew about a conspiracy but failed to take action. This claim is also dismissed without prejudice. Plaintiff will be given one last opportunity to correct these important pleading deficiencies, if he can do so consistent with the applicable law and factual circumstances.

**B. Nurse Tsakiris**

Plaintiff alleges Nurse Tsakiris violated the ADA and RA by failing to make reasonable accommodations for his disability and intentionally discriminating against him. He further alleges she conspired with Rutgers, Dr. Briglia, and Dr. Woodward to subject him to deliberate indifference. Nurse Tsakiris argues that all claims besides the Eighth Amendment deliberate indifference and

11

First Amendment retaliation claims must be dismissed. The Court agrees.

As previously noted, there is no cause of action against individuals under the ADA and RA. Even if there were such an action, Plaintiff would have failed to state a claim against Nurse Tsakiris for reasonable accommodation under the ADA as the complaint only alleges Plaintiff requested the accommodation, an accessible van, from Dr. Woodward, SWSP's ADA Coordinator.[3] Complaint ¶¶ 14, 33. Nothing in the complaint supports a reasonable inference that Nurse Tsakiris was involved in denying the ADA-accessible van or knew that Plaintiff would be charged with a disciplinary infraction. The ADA and RA claims against Nurse Tsakiris are dismissed with prejudice.

Plaintiff also has not sufficiently alleged Nurse Tsakiris conspired with the other defendants to violate his civil rights. There no facts reasonably supporting an inference that there was an agreement between Defendants to deprive Plaintiff of medical care for a discriminatory reason. Plaintiff's assertion that there was "'invidiously discriminatory animus' behind the

---

[3] "[A] plaintiff can assert a failure to accommodate as an independent basis for liability under the ADA . . . . To make out such a claim, a plaintiff must show that the accommodation he seeks is reasonable, *i.e.*, that it is 'necessary to avoid discrimination on the basis of disability.'" *Muhammad v. Court of Common Pleas of Allegheny Cnty., Pa.*, 483 F. App'x 759, 763 (3d Cir. 2012) (quoting 28 C.F.R. § 35.130(b)(7))(internal citations omitted).

conspirator's actions" is the kind of conclusory allegation that is not entitled to the assumption of truth. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (noting allegations that are no more than conclusions are not entitled to assumption of truth); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("[M]ere restatements of the elements of [a] claim [ ] ... are not entitled to the assumption of truth." (alterations and omissions in original) (internal citations and quotation marks omitted)). Plaintiff may be able to amend his complaint to sufficiently plead a conspiracy claim, however. It will therefore be dismissed without prejudice.

Finally, Nurse Tsakiris argues the retaliation claim should be dismissed in part. To the extent the claim is based on violating the ADA, Plaintiff has failed to state a claim for the reasons previously stated. "[I]ndividual Defendants cannot be held liable for retaliation under the ADA. While the Third Circuit has not directly ruled on this issue, courts in this district have found no individual liability exists." *Cottrell v. Family Practice Assocs.*, No. 15-2267 2016 WL 3029921, at *2 (D.N.J. May 26, 2016) (citing *P.N. v. Greco*, 282 F. Supp. 2d 221, 243 (D.N.J. 2003)). To the extent the claim is based on the First Amendment, Nurse Tsakiris concedes Plaintiff has stated a claim, Briglia/Tsakiris Motion at 9-10, and the Court agrees.

13

The retaliation claim is dismissed with prejudice on the ADA-component, but may continue under the First Amendment.

**C. Rutgers**

Rutgers argues the complaint should be dismissed with prejudice in its entirety.

The RA claims against Rutgers must be dismissed as Plaintiff has not pled that Rutgers is a recipient of federal financial assistance. 29 U.S.C. § 794(a). *See Muhammad v. Court of Common Pleas of Allegheny Cnty., Pa.*, 483 Fed. App'x 759, 762-63 (3d Cir. 2012) (noting that in addition to pleading the same elements as under Title II of the ADA, plaintiffs making RA claim must plead that "the violation was committed by a program or activity receiving 'Federal financial assistance.'" (quoting 29 U.S.C. § 794(a)). The RA claims are dismissed without prejudice.

Plaintiff first alleges Rutgers failed to make reasonable accommodations for his disability by providing him with an accessible van to his court appearance. Complaint ¶¶ 73-78. He has failed to state a failure to accommodate claim as there is no factual support for the inference that Rutgers denied the van. According to the complaint, Plaintiff requested the van from SWSP employee Dr. Woodward. *Id.* ¶ 33. The reasonable inference is that the only entity with the ability to provide the requested accommodation is SWSP, not Rutgers, as the prison

14

would be in charge of providing transportation to court hearings. *See id.* ¶ 59. The failure to accommodate claim is dismissed without prejudice.

Plaintiff alleges that Rutgers' failure to provide muscle relaxant and stronger pain medication caused Plaintiff to be in such pain that he was unable to participate in various medical and prison programs. Complaint ¶¶ 79-81. This claim is a medical malpractice or Eighth Amendment claim, not an ADA claim.

"The treatment (or lack thereof) of a prisoner's medical condition typically does not provide a basis upon which to impose liability under the ADA." *McClintic v. Pa. Dep't of Corr.*, No. 12-6642, 2013 WL 5988956, at *11 (E.D. Pa. Nov. 12, 2013); *see also Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) (noting that denial of medical treatment for disabilities "is not encompassed by the ADA's prohibitions"); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (concluding that a lawsuit under the ADA "cannot be based on medical treatment decisions"); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions do not ordinarily fall within the scope of the ADA); *Rashad v. Doughty*, 4 F. App'x 558, 560 (10th Cir. 2001) ("[T]he failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th

15

Cir. 1996) ("He is complaining about incompetent treatment of his paraplegia. The ADA does not create a remedy for medical malpractice."). Plaintiff's allegations that Rutgers and its doctors did not sufficiently treat his disability, including through physical therapy, is not properly brought under the ADA.[4] This claim is therefore dismissed without prejudice for failure to state a claim.

Plaintiff further claims Rutgers discriminated against him by virtue of his disability by subjecting him to a disciplinary charge. Complaint ¶¶ 82-84. This claim must also be dismissed as there is no factual support in the complaint for a reasonable inference that Rutgers, the medical provider, invited the disciplinary charge, adjudicated the charge, or actually knew that Plaintiff would be subjected to a disciplinary charge. *See Owens v. Armstrong*, 171 F. Supp. 3d 316, 333 (D.N.J. 2016) (noting intentional discrimination under ADA requires actual knowledge (citing *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013))). The claim is dismissed without prejudice.

---

[4] To the extent the complaint alleges Plaintiff was denied the ability to participate in recreation time and religious services, the claim cannot proceed against Rutgers as it is not the public entity that provides those services. Moreover, the complaint does not contain any factual allegations about those alleged denials.

Plaintiff also brings retaliation claims against Rutgers. The ADA prohibits retaliation, stating in relevant part:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C.A. § 12203. Plaintiff alleges Defendants falsified his medical records and deprived him of medical care out of retaliation for making ADA claims against them. Giving Plaintiff the benefit of all reasonable inferences, he has sufficiently alleged an ADA retaliation claim against Rutgers. Defendants' motion to dismiss is denied as to this claim.

In addition to his ADA claims, Plaintiff alleges Rutgers violated his constitutional rights by engaging in retaliation in violation of the First Amendment, denying him adequate medical care in violation of the Eighth Amendment, and conspiring with Drs. Woodward and Briglia and Nurse Tsakiris to deny him medical care. These claims must also be dismissed without prejudice.

Plaintiff cannot rely on the doctrine of *respondeat superior* to sustain § 1983 claims against Rutgers. In order for Rutgers to be liable under § 1983 for the actions or inactions of its employees, Plaintiff must allege that a policy or custom of that entity caused the alleged constitutional violations. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d

Cir.2003) (citing *Bd. Of Cnty. Comm'rs of Bryan Cnty. Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Defreitas v. Montgomery Cnty. Corr. Facility*, 525 F. App'x 170, 177 (3d Cir. 2013) (listing three ways a policy or custom can be established). Plaintiff has not alleged there is a relevant Rutgers policy or custom that violated his constitutional rights, nor has he alleged that Rutgers violates federal law in the absence of a formally announced policy. He also does not allege that Rutgers has failed to act at all, in spite of the fact that there is an obvious need for Rutgers "to take some action to control [of its agents] ..., and the inadequacy of existing practice [is] so likely to result in the violation of constitutional rights, that [Rutgers] can reasonably be said to have been deliberately indifferent to the need." *Defreitas*, 525 F. App'x at 177 (internal citations omitted). Plaintiff has therefore failed to sufficiently allege Rutgers itself engaged in retaliation, denial of adequate medical care, or conspiracy. These claims shall be dismissed without prejudice.

To summarize, all ADA and RA claims against Rutgers shall be dismissed without prejudice with the exception of the ADA retaliation claim which shall continue. All federal constitutional claims shall be dismissed without prejudice.

**V.   CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss is granted in part. An appropriate order follows.

**December 23, 2016**       **s/ Jerome B. Simandle**
Date      JEROME B. SIMANDLE
     Chief U.S. District Judge

19